UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DIANE M RIPBERGER,                    )
                                      )
                  Plaintiff,          )
                                      )
            vs.                       )       No. 1:15-cv-00674-TAB-JMS
                                      )
CORIZON INC.,                         )
                                      )
                  Defendant.          )

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction**

Plaintiff Diane M. Ripberger applied for an open position with Defendant Corizon, Inc., but Corizon never contacted her for an interview.  Ripberger believes the reason she was passed over for this position is a prior lawsuit she filed against Corizon.  Corizon moves for summary judgment on all of Ripberger's claims, but Ripberger points to sufficient evidence to put her retaliation claim before a jury, including troubling emails suggesting Ripberger's prior lawsuit was the real reason Corizon never interviewed her.

**II.     Preliminary issues**

The Court first must address three preliminary issues: (1) whether to allow Ripberger's surreply; (2) whether Ripberger's statement of material facts in dispute is sufficient; and (3) whether Ripberger exhausted her administrative remedies.

**A.      Ripberger's Surreply**

The briefing on Corizon's summary judgment motion drew a surreply from Ripberger, to which Corizon objected.  Corizon asks the Court to disregard all or part of Ripberger's surreply.

In limited situations, surreplies are allowed as a matter of right with summary judgment motions. Local Rule 56-1(d) states:

> A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections.

"District courts are entitled to 'considerable discretion in interpreting and applying their local rules.'" *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) (quoting *Cuevas v. United States*, 317 F.3d 751, 752 (7th Cir. 2003)).

Ripberger had the right to file a surreply because Corizon's reply brief objects to the admissibility of her evidence and presents a new argument. Corizon's reply brief argues for the first time that Ripberger's statement of material facts in dispute is deficient under Rule 56-1(f). Ripberger's surreply responds to Corizon's argument that the Court should admit Corizon's statement of material facts over Ripberger's. Thus, a surreply is appropriate.

Additionally, Ripberger points out that Corizon's reply brief expressly criticizes the evidence cited in her response and broadly paints her evidence as inadmissible. For example, Corizon's reply brief asserts:

- "In fact, most of Ripberger's 'evidence' is not admissible evidence at all, but her own speculation, unsupported argument, and mischaracterization of the record." [Filing No. 58, at ECF p. 1.]

- "Ripberger's conclusory attacks on the credibility of Corizon and its employees are unsupported by any admissible evidence whatsoever, entirely legally inappropriate during summary judgment analysis under Seventh Circuit law, and cannot defeat summary judgment." [*Id*. at 1-2.]

- "Ripberger's support for the 'disputed' statements of fact is nothing more than … irrelevant and inadmissible statements. Ripberger's approach wholly fails to … 'specifically controvert[]' the moving party's statement of facts with admissible evidence." [*Id*. at 3.]

- "Ripberger either overtly admits, or fails to offer any admissible evidence in her Opposition or supporting materials to rebut, the key facts." [*Id*. at 4.]

- "But she offers no admissible evidence to back up this allegation." [*Id*. at 9.]

Corizon contends it "did not object to the admissibility of evidence," but points to the absence of evidence. [Filing No. 60, at ECF p. 2.] However, the examples above demonstrate Corizon attacked the admissibility of Ripberger's evidence. If Corizon only intended to point to an absence of evidence, it failed to make that distinction clear.

Overall, Ripberger limits her surreply to responding to Corizon's new argument and each of evidentiary objections. Ripberger organizes her surreply by copying the headings from Corizon's reply brief, identifying Corizon's objections, and presenting a response. In this way, the surreply is limited to Corizon's objections. To some extent, the surreply repeats parts of Ripberger's arguments, but the main focus of the surreply is the evidence at issue. This is a surreply anticipated by the local rules and, therefore, Ripberger's surreply is largely proper.

Nevertheless, three portions of Ripberger's surreply are unwarranted and will be ignored.

1.     In section D, subsection 2, Ripberger begins by stating, "Corizon does not clearly object to Ripberger's evidence in this section." [Filing No. 59, at ECF p. 7.] As Corizon points out, this section does nothing more than rehash one of Ripberger's prior arguments. Thus, the Court disregards the section.

2.     In section E, subsection 2, Ripberger states, "Corizon raises the new argument that Dale Fleming, the Supervisor of the Addition Recovery Specialists at the Pendleton facility, and Vicki Poore, the Health Services Administrator at the Pendleton facility, were "non-decisionmakers." [Filing No. 59, at ECF p. 7.] This is more of an allegation than an argument, but regardless, it is not new. Corizon's opening brief states, "Schoenradt made this decision and was not aware of any previous communication between Health Services Administrator Vicki

Poore and local supervisor Dale Fleming about Ms. Ripberger's application, nor did any such communication influence his decision." [Filing No. 35, at ECF p. 7.] Thus, this is not a new argument in Corizon's reply brief, and the Court disregards this portion of Ripberger's surreply.

3.      In the same subsection, Ripberger states, "Corizon makes the new argument that it did not raise the gate lock defense earlier because Schoenradt was not sure if he learned about it before 'making the decision not to interview Ripberger.'" [Filing No. 59, at ECF p. 16.] This is not a new argument either. Ripberger brings this up in her response brief, discussing Schoenradt's deposition testimony. Thus, Corizon's reply to this part of Ripberger's response brief is not a new argument, so the Court disregards this portion of Ripberger's surreply as well.

As such, the Court overrules Corizon's objection [Filing No. 60] in part and sustains it in part. The Court disregards the three portions of Ripberger's surreply described above. Otherwise, the surreply is properly before the Court.

**B.      Sufficiency of Ripberger's fact section**

Corizon also argues Ripberger failed to comply with Local Rule 56-1's requirements regarding how she sets forth material facts in dispute. Corizon argues the Court should admit "the bulk of the facts submitted by Corizon" as true because Ripberger "wholly fails to comply with the requirement" of controverting Corizon's statement of facts with admissible evidence. [Filing No. 58, at ECF p. 3.] The Court will not guess what constitutes the "bulk" of Corizon's seven-page statement of undisputed material facts, which Corizon believes should be admitted pursuant to Local Rule 56-1(f). Nor will the Court guess why Corizon believes Ripberger's 25-page statement of disputed material facts is insufficient.

Notably, however, Ripberger does not dispute six facts, that: (1) "On August 24, 2012, the Indiana Department of Correction (IDOC) fired Ripberger and issued a 'gate closure' or gate

lock order against her." (2) "IDOC's gate lock order against Ripberger still remains in effect."

(3) "Ripberger believes that she has applied for employment with Corizon as an Addiction

Recovery Specialist 'several' times since 2010, always online, but does not know how many or

when except for November 29, 2013."[1] (4) "Corizon Talent Network records reflect that

Ripberger first registered on February 10, 2013, and further reflect that the only application

submitted from her date of registration to present is the one she submitted through CareerBuilder

on November 29, 2013." (5) "The November 29, 2013 application submitted by Ripberger

contained five questions, the first of which was 'This position pays between $24,358 and

$29,900 per year, depending on years of experience, does that hold your interest?' and (6)

"Ripberger answered "no" to the salary question on the application."  [Filing No. 58, at ECF p.

4.]  Thus, the Court accepts these facts as true for summary judgment purposes.

        Seeking to have the Court accept a more sweeping view of its facts, Corizon points to

*U.S., ex rel. Abner v. Jewish Hosp. Health Care Servs., Inc.*, No. 4:05-CV-106-RLY-WGH, 2010

WL 1381816, at *2 (S.D. Ind. Mar. 31, 2010).  In *Abner*, the Court admitted the movant's

statement of facts because the non-moving party failed to comply with the requirements of Local

Rule 56-1.  However, the case at hand is easily distinguished from *Abner*, in which the non-

movant only provided three sentences of material facts in dispute.  *Id.*  Ripberger devotes 25

pages to the facts she disputes.  What is more, *Abner* did not simply accept the movant's facts as

true, but first determined if the parties' arguments revealed an obvious dispute.  *Id.*  *Abner* does

not support Corizon's argument that the Court should admit the "bulk" of the movant's facts as

true over the non-movant's lengthy discussion of disputed facts.

---

[1] To this fact, Ripberger points out that she testified that she applied more than five and probably less than ten times.  [Filing No. 49-23, at ECF p. 11.]

Generally, Local Rule 56-1(f) is employed to admit the movant's facts if the non-movant fails to respond, *Charles v. Lt. Horn Sgt.*, No. 2:15-CV-00344-JMS-MJD, 2016 WL 4440411, at *1 (S.D. Ind. Aug. 23, 2016), and courts are otherwise reluctant to rely on Local Rule 56-1(f) to adopt the movant's facts as true. *Thatcher v. Perkins, Van Natta, Sandove Kelly, Merdian Plastic Surgery Ctr., P.C.*, No. 1:10-CV-01115-TWP-TAB, 2013 WL 3287674, at *5 (S.D. Ind. June 28, 2013). The Court will not admit "the bulk of the facts" submitted by Corizon as true. As for the six facts Corizon specifically points to, the Court need not rely on Local Rule 56-1(f) for admission because Ripberger does not dispute them. These facts are duly reflected in the background section below.

## C.    Exhaustion of administrative remedies

Corizon argues Ripberger's retaliation claim is barred by her failure to timely exhaust administrative remedies with the Equal Employment Opportunity Commission. According to Corizon, Ripberger's November 29 application was never made subject of the November 8 EEOC charge, despite their closeness in time. As a result, Corizon claims Ripberger is not entitled to relief. Ripberger contends she was not required to file a new EEOC charge after she submitted an application just a few weeks later on November 29. The Court agrees.

While it is true that Ripberger's federal suit must be based on the charge of discrimination filed with the EEOC, the scope of the federal complaint may also include claims "that are like or reasonably related to the allegations in those charges." *Zajac v. Mittal Steel USA*, No. 3:07-CV-35-PS, 2008 WL 4936975, at *12 (N.D. Ind. Nov. 17, 2008) (citing *Gawley v. Ind. Univ.*, 276 F.3d 301, 313 (7th Cir. 2001)). "To determine whether a plaintiff's federal complaint allegations are within the scope of [her] administrative charge, the court determines whether it 'is like or reasonably related to the allegations of the charge and growing out of such

6

allegations.'" *Kicinski v. Alverno Clinical Labs., LLC*, No. 2:09-cv-321, 2009 WL 4611427, at *1 (N.D. Ind. Dec. 1, 2009) (quoting *Gawley,* 276 F.3d at 313). "[T]he the EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals." *Zajac,* 2008 WL 4936975, at *12. The Court applies a "liberal standard" in its analysis of the permissible scope of an EEOC charge. *Id.*

Viewing Ripberger's EEOC charge and affidavit from this perspective, the Court finds her November 29 application well within the scope of, and reasonably related to, the allegations in the EEOC charge. Corizon's alleged failure to interview Ripberger after she submitted her November 29 application is practically identical to the EEOC claim that "Corizon failed to interview me and Corizon failed to respond to my applications." [Filing No. 49-8, at ECF p. 2.] Ripberger's federal complaint alleges that "Mrs. Ripberger again requested employment with Corizon," "Corizon refused to consider Mrs. Ripberger for employment," and "On November 8, 2013, Ripberger filed her second EEOC Charge of Discrimination with the [EEOC]." [Filing No. 17, at ECF p. 4.] Ripberger's response brief specifically asserts that the November 29 application is related to her November 8 EEOC charge. [Filing No. 53, at ECF p. 27.] Corizon's alleged failure to interview and hire Ripberger with respect to her November 29 application reasonably describes the same conduct and implicates the same individuals as the EEOC charge of retaliation with respect to her other applications.

Corizon contends that Ripberger offers only speculation evidence that she submitted previous applications. This contention is not the focus of the narrow issue of exhaustion of administrative remedies. Here, the Court is only looking at whether Ripberger's November 29 application is reasonably related to the subject of Ripberger's EEOC charge. Nevertheless, the Court takes Corizon's detour to explain why it is not consequential.

Essentially, Corizon argues the timing of the EEOC charge itself undermines Ripberger's ability to exhaust administrative remedies because there is no evidence that she submitted applications to Corizon between January 13 and November 8, 2013 (the 300-day window for filing an EEOC complaint under Title VII).  However, Ripberger points to evidence that she submitted applications within this window.  For example, the parties agree that on February 10, 2013, Ripberger registered with Corizon's job application website, and on July 21, 2013, Ripberger made an inquiry through the Corizon's website, asking why she received no response to her applications and why she was not interviewed.

Corizon points to *Hennessy v. Univ. of Chicago*, 544 F. Supp. 2d 705, 713 (N.D. Ill. 2008), where summary judgment was granted because job applications were not received by a potential employer.  However, it was undisputed in *Hennessy* that the plaintiff failed to submit any applications.  Unlike *Hennessy,* Ripberger disputes Corizon's assertion that she did not submit applications, relying on her deposition testimony that she applied with Corizon more than five times and probably less than ten times [Filing No. 49-29, at ECF p. 11], and that she submitted a few applications in 2013.  [Filing No. 49-23, at ECF p. 12-13.]  In the end, Corizon's argument falls flat.

Instead of looking at whether Ripberger submitted earlier applications, the Court looks at whether the EEOC charge encompasses Ripberger's November 29 application.  On this point, Corizon is silent.  The Court is thus without reason to find Ripberger's EEOC charge is unrelated to her November 29 application.  Accordingly, the Court finds Ripberger's November 29 application is within the scope of her EEOC charge.  Ripberger was not required to file a new EEOC charge with her November 29 application because it relates to the facts of the EEOC charge she filed just a few weeks earlier on November 8.  *See Gawley,* 276 F.3d at 314 n.8 ("Of

8

course, an employee is not required to file a separate EEOC charge alleging retaliation when the retaliation occurs in response to the filing of the original EEOC charge").  Therefore, Ripberger exhausted her administrative remedies.

## III.   Background

In 2010, Ripberger worked for the Indiana Department of Corrections as a substance abuse counselor at the Pendleton Correctional Facility.  That year, IDOC outsourced substance abuse counseling services to Corizon, and Ripberger applied with Corizon to continue working at Pendleton as an addiction recovery specialist.  Corizon delegated its hiring and placement decisions to Mick Schoenradt.  Corizon did not hire Ripberger after her position with IDOC was eliminated.

On January 18, 2011, Ripberger filed a complaint against Corizon with the EEOC, alleging sex and age discrimination and retaliation after she supported a colleague's discrimination complaint.  Ripberger pursued these 2011 allegations until December 10, 2014, when the Seventh Circuit affirmed the district court's grant of summary judgment in favor of Corizon.  *Ripberger v. Corizon, Inc.*, 773 F.3d 871 (7th Cir. 2014).  According to Ripberger, this lengthy litigation before the EEOC, the district court, and the court of appeals made her well known to Corizon.

In the meantime, Ripberger found other employment with IDOC.  In March 2011, Ripberger began working as a correctional counselor at Pendleton.  She held that position for over one year.  However, on August 24, 2012, IDOC fired Ripberger and issued a gate lock against her.  A gate lock is an order for security guards to block a person from accessing a facility.  Ripberger's gate lock at Pendleton is still in effect.

Approximately six months later, on February 10, 2013, Ripberger registered with the Corizon Talent Network website, which allowed her to electronically submit applications to Corizon through CareerBuilder.  Ripberger claims she submitted 5 to 10 electronic applications to Corizon.  On July 21, 2013, Ripberger sent, and Corizon received, an electronic communication through the website that stated:

> During the past year I have applied for a position as a Substance Abuse Counselor in the Indianapolis Area and the Pendleton area which were advertised on your website, I have confirmation of my application and receive emails from your company from time to time.
>
> Because I have over 20 years of experience in the Substance Abuse Counseling field could you please inform me as to why I was not given a response to my application nor was I given the courtesy of a personal interview.

[Filing No. 49-6.]  Corizon did not respond to Ripberger's inquiry.

On November 8, 2013, Ripberger filed a new EEOC charge[2] against Corizon for its failure to hire her because of her age, gender, and in retaliation for complaining about discrimination.  Three weeks later, on November 29, 2013, Ripberger submitted an electronic application to Corizon for an open position as an addiction recovery specialist.  Among the questions in the November 29 application was a salary question: "This position pays between $24,358 and $29,900 per year, depending on years of experience, does that hold your interest?"  Ripberger answered "no" to this question.  [Filing No. 54-1, at ECF p. 3.]

On November 29, 2013, Vernessa Streater at Corizon received Ripberger's application and on December 2, 2013, she forwarded it by email to Vicki Poore, the Pendleton Health Services Administrator, and Schoenradt, Corizon's Regional Director of Addiction Recovery.  The email was titled "ARS Resume for Review 6453," and Ripberger's name appeared twice on

---

[2] This 2013 EEOC charge is the basis of the case at hand.

the first page.  It was Corizon's protocol for Schoenradt to receive all applications for addiction recovery specialists.

On December 2, 2013, Poore forwarded Ripberger's application to Dale Fleming, the site supervisor at Pendleton, to alert him that Ripberger had applied.  The two discussed Ripberger's past lawsuit, and Fleming concluded, "I am not interested in hiring her."  [Filing No. 54-1.]  On December 20, 2013, Fleming alerted Schoenradt that Ripberger applied.  Fleming and Schoenradt were aware of Ripberger's lawsuit against Corizon, which at the time was pending before the Seventh Circuit.  Schoenradt emailed Fleming about Ripberger: "Did you say she applied.  Please send me that application."  [Filing No. 54-2.]  Schoenradt subsequently sought guidance about the situation from Corizon's regional office and was instructed to not make any special deviation from normal practice.  On December 24, 2013, Schoenradt directed Fleming to keep him informed of any further contact from Ripberger.  In particular, Schoenradt instructed Fleming, "do NOT delete anything in regards to said person and make no contact with her." [Filing No. 49-14.]  Around this time, Schoenradt became aware of IDOC's gate lock against Ripberger.  [Filing No. 36-6, at ECF p. 4.]  Schoenradt thinks he learned about the gate lock after deciding not to interview Ripberger, but he is not positive.  [Filing No. 36-2, at ECF p. 7.]

On February 18, 2014, Corizon responded to Ripberger's 2013 EEOC complaint, stating: "Pursuant to its standard procedure, Corizon did not interview Ripberger because her response to the pay question disqualified her for the position."  [Filing No. 49-7, at ECF p. 3.]  Time passed, and the State hired Ripberger in December 2014 as a Family Case Manager II in the Department of Child Services.  On January 29, 2015, the EEOC dismissed the charge against Corizon with a Notice of Right to Sue.  On April 27, 2015, Ripberger initiated this lawsuit, alleging Corizon

11

failed to hire her due to sex and age discrimination, and retaliation.  Corizon's motion for

summary judgment followed.

## IV.    Standard of review

In the summary judgment briefing, Ripberger abandons her sex and age discrimination

claims, leaving only her allegation that Corizon retaliated against her for engaging in protected

activity.  [Filing No. 53, at ECF p. 29.]  Specifically, Ripberger alleges Corizon failed to hire her

in 2013 in retaliation for having complained about discrimination in 2011.  Corizon argues

summary judgment in its favor is appropriate because Ripberger fails to establish evidence that

demonstrates retaliation was a motivating factor in its decision.

To prevail on its motion for summary judgment, Corizon must show that there is no

"genuine dispute as to any material fact" and that it is entitled to judgment as a matter of law.

*Wesbrook v. Ulrich*, 840 F.3d 388, 391 (7th Cir. 2016) (citing Fed. R. Civ. P. 56(a)).  The Court

must view all evidence and draw all reasonable inferences in a light most favorable to Ripberger,

the non-moving party.  *Woods v. City of Berwyn*, 803 F.3d 865, 869 (7th Cir. 2015).  "A party

who bears the burden of proof on a particular issue may not rest on its pleadings, but must

affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material

fact that requires trial."  *Hemsworth v. Quotesmith Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

If Corizon demonstrates the absence of a material fact in issue and Ripberger fails to present

evidence of a material question, the Court must enter summary judgment.  *Poullard v.

McDonald*, 829 F.3d 844, 852 (7th Cir. 2016).

## V.    Discussion

Ripberger claims Corizon retaliated against her because she "opposed and assisted others

to oppose sex and age discrimination."  [Filing No. 17, at ECF p. 6.]  Title VII "prohibits

discriminating against an employee 'because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382-83 (7th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a)). Ripberger alleges that despite her experience and qualifications, Corizon ignored her applications for open positions and chose not to interview her because of her lawsuit and related protected activity.

The Seventh Circuit's recent decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016), looms large here. In *Ortiz,* the Seventh Circuit made it abundantly clear that Courts should not "shoehorn" evidence into either the direct or indirect method, and should not rely on the often-used "convincing mosaic" as a governing legal standard. *Id.* at 763-64. The sole question that matters under *Ortiz* is whether "a reasonable juror could conclude that Ortiz would have kept his job if he had a different ethnicity, and everything else had remained the same." *Id.* at 764.

As Judge Easterbrook further explained in *Ortiz*:

> The use of disparate methods and the search for elusive mosaics has complicated and sidetracked employment-discrimination litigation for many years. During the last decade, every member of this court has disapproved both the multiple methods and the search for mosaics.
>
> ***
>
> The time has come to jettison these diversions and refocus analysis on the substantive legal issue.

*Id.*

Thus, the question at summary judgment is simply

> whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant

13

evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."

*Id.* at 765.

The *Ortiz* court went on to explain that the decision does not concern *McDonnell Douglas* or any other burden-shifting framework no matter what it is called as shorthand. *Id.* at 766. "We are instead concerned about the proposition that evidence must be sorted into different piles, labeled 'direct' and 'indirect,' that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole. That conclusion is consistent with *McDonnell Douglas* and its successors." *Id.*

With this "rats nest" of surplus tests removed from the analysis, the Court now considers the evidence before it on summary judgment. Ripberger argues she can establish her retaliation claim under the direct method, to which Corizon responds by asserting the Ripberger is misinterpreting *Ortiz*. [Filing No. 58, at ECF p. 5.] With the proper analysis of this case under *Ortiz*, there is no dispute that Ripberger engaged in protected activity and Corizon took an adverse employment action against her. Ripberger's argument focuses on whether there was a causal connection between the two. Ripberger points to the following email exchanges to support her argument that Corizon did not interview her because of her lawsuit.

Beginning with an April 2011 email[3] from Fleming to Schoenradt with the subject "Diane Ripberger," Fleming specifically mentions his knowledge about her lawsuit and states:

---

[3] Corizon contends the April 2011 email cannot support Ripberger's position because it was part of her prior lawsuit. In an undeveloped argument, Corizon relies on the doctrine of res judicata for its contention. However, this doctrine does not control the admissibility of evidence. "Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded." *Ortiz*, 834 F.3d at 765. The 2011 email is relevant to Corizon's view of Ripberger's later applications because Fleming and Schoenradt were involved during the 2013 application. Thus, it supports Ripberger's position.

"Not sure it is wise to have her working with all the AR staff that got hired instead of her.  She was very nasty when she left.  I am not saying she will absolutely sabotage, but it definitely gives the opportunity."  [Filing No. 49-1.]  Schoenradt replied to this email by stating, "OMG!"  *Id.*

More telling, a December 2013 email from Fleming to Poore about Ripberger's November 29 application states, "Can she apply since she lost the [lawsuit] against Corizon?" [Filing No. 54-1, at ECF p. 1.]  Poore replied, "I don't think that we should interview her.  What do you think?"  *Id.*  Fleming answered, "I'm not interested in hiring her."  *Id.*  Referring to Ripberger's prior lawsuit, Fleming also lamented that "[s]he tried to say that she was more qualified for my job than I was even though she did not apply for it, so I don't understand why she would want to work for me."  *Id.*  Ripberger's job application was attached to the full conversation between Fleming and Poore.  Fleming separately emailed Schoenradt about Ripberger's application, urgently stating, "I need to talk to your asap!  Please call!"  [Filing No. 49-14.]  In a subsequent email, Schoenradt directed Fleming to "make no contact with her." [Filing No. 49-14.]

Corizon's emails constitute powerful evidence that it did not want to interview Ripberger because of her lawsuit and related protected activity.  Despite this evidence, Corizon makes two arguments for why it is entitled to summary judgment—Ripberger's "no" response on the salary question and the gate lock against her.

### 1.   *Ripberger's answer to the salary question*

Corizon argues it did not interview or hire Ripberger because she answered "no" to the salary question on her application.[4]  Corizon explains its standard practice is to not respond to or

---

[4] Ripberger struggles to identify a comparator who similarly answered "no" to the salary question on Corizon's employment application who was nevertheless interviewed and hired. However, this does not doom her retaliation claim.  A reasonable juror could infer that Corizon

further consider applicants for addiction recovery positions who answer "no" to the application question about whether the salary range interested them.  As support, Corizon points to its own assertion from its EEOC position statement.  [Filing No. 49-17, at ECF p. 5.]  However, this is not evidence of an official policy.

Corizon also points to testimonial evidence.  According to Schoenradt, "[i]t was Corizon's practice not to respond to or further consider employment applicants who answer 'no' to that question."  [Filing No. 36-6, at ECF p. 3.]  Looking at Ripberger's application, he saw that she said no to the salary question, and "at that point we normally would not continue to interview people."  [Filing No. 36-2, at ECF p. 7.]  Similarly, Poore testified "[w]e decided that we would not interview her, based on the fact that she had said that the pay range was not something that she would be interested in."  [Filing No. 36-5, at ECF p. 4.]

This evidence supports Corizon's position.  It is undisputed that Ripberger answered "no" to the salary question and it is logical that Corizon would not interview people who were not interested in the posted salary.  As Corizon points out, rejecting applicants that do not appear interested in the position is a legitimate reason for declining an interview.  *See e.g., Lockman-Gelston v. Variable Annuity Life Ins. Co.,* No. IP00-C-0786-T/K, 2002 WL 977571 at *7 (S.D. Ind. March 29, 2002) ("[g]iven that Plaintiff advised [the decisionmakers] that she was 'probably not really' interested in the position, the fact that she was never offered the position is neither surprising nor evidence of pretext.").  By responding "no" to the salary question on the application, Ripberger essentially told Corizon that she was not interested in the position.  This is a potentially legitimate reason for not interviewing her.

---

passed over Ripberger for an interview because of her lawsuit, and thus at summary judgment, Ripberger need not rely on the *McDonnell Douglas* burden-shifting framework.

Ripberger argues that looking at her situation in context, Corizon merely uses this reason as pretext for its decision not to hire her.  Ripberger argues Corizon's real reason for its decision not to interview and hire her was that she had complained of discrimination, which resulted in a lawsuit against Corizon.  According to Ripberger, Corizon's representation that it rejected her application based on the salary question is simply dishonest.  This assertion has traction because despite her obvious "no" answer to the salary question, her application was circulated and discussed multiple times for at least 23 days.  [Filing No. 49-14.]

Looking back at Corizon's emails, Poore sent Ripberger's application with the "no" answer to Fleming, the supervisor of the position for which Ripberger was applying, pointing out her lawsuit and stating, "I don't think that we should interview her.  What do you think?"  [Filing No. 54-1.]  If a practice of rejecting applicants who were not interested in the salary range existed, presumably Poore would know the answer—no.  Later emails involving Schoenradt similarly mention Ripberger's lawsuit, yet fail to mention her answer to the salary question.

Even after Schoenradt clearly recognized Ripberger answered "no" to the salary question, he admittedly further considered her application, seeking advice on whether he should nevertheless interview her because of her lawsuit.  [Filing No. 36-2, at ECF p. 7.]  Corizon contends in doing so, Schoenradt did not find the "no" answer did not disqualify Ripberger.  Rather, Corizon explains it was Schoenradt's attempt to treat Ripberger more favorably.  But even if this were to be believed, it highlights a key material fact in dispute: whether Corizon has a standard practice of not interviewing applicants who answer "no" to the salary question.  Despite Corizon's claim that it maintains this practice, the inconvenient truth is that it further considered Ripberger's application despite her "no" answer.  Corizon offers no evidence of a policy of rejecting applicants who are not interested in the posted salary.  This is a factual issue

best left to the jury.  The strength of this email evidence convinces the Court that a jury must decide the real reason Corizon rejected Ripberger's application.

  2.  *Ripberger's gate lock*

Corizon also argues it did not interview and hire Ripberger because she had a gate lock issued against her in 2012 that remained in place.  Corizon explains it is unable to interview or hire applicants who are gate locked by IDOC.  However, Ripberger shows this assertion is flawed; namely, that gate locks were issued against her in the past, but she was later interviewed and hired.  Moreover, the parties have materially different views on the significance of a gate lock.  Ripberger sees it as a temporary block to access that comes and goes, while Corizon sees it as a quite serious and nearly permanent block on access.  As explained below, this too is a question for trial.

Corizon explains that due to the gate lock, Ripberger could not enter an IDOC facility anywhere in Indiana.  As a result, Corizon claims it could not have brought her in for an interview and would have been prevented from hiring her to work in addiction recovery, because both would take place inside IDOC facilities.  The evidence does not support Corizon's position. IDOC's deputy commissioner of operations stated that "[a] gate closure/lock remains in effect unless and until specifically lifted by subsequent IDOC order."  [Filing No. 36-10, at ECF p. 2.] Corizon's employee handbook states:

> An institution may temporarily or permanently withdraw access from anyone who works in or enters the institution.  Loss of institution access normally results in termination of employment by Corizon, as security clearance/access is a precondition of employment by Corizon.

[Filing No. 36-6, at ECF p. 7.]

It is undisputed that Ripberger was gate locked by IDOC in 2012, and that the gate lock is still in effect.  Schoenradt testified that after Ripberger applied in November 29, "Fleming

brought it to my attention verbally that he was under the impression … Ripberger might have been on a gate lock, so we wouldn't have been able to hire her at that point anyway." [Filing No. 36-2, at ECF p. 7.]

Corizon asserted the gate lock as an after-acquired evidence defense because Schoenradt cannot remember whether he became aware of the gate lock before or after he decided not to interview Ripberger. Corizon's assertion that it would not have hired Ripberger based on the gate lock alone is therefore speculative at best. Absent evidence, such as Schoenradt's recollection, it is up to a jury to decide whether the gate lock was a legitimate reason for Corizon not to interview Ripberger. Thus, Corizon cannot rely on the gate lock on summary judgment. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-63 (1995); *see also Prochaska v. Menard, Inc.*, 829 F. Supp. 2d 710, 727 (W.D. Wis. 2011) ("Because so much speculation is required in considering an after-acquired evidence defense, it will be the rare case that an employer will be able to show as a matter of law that it is entitled to the defense.").

Even if Corizon were able to show the gate lock was a legitimate reason, Ripberger counters it with evidence that Corizon could have interviewed and hired her, notwithstanding the gate lock. Ripberger testified that she has entered, interviewed, and been hired at state facilities despite prior gate locks. [Filing No. 49-23, at ECF p. 8.] Ripberger explained,

> A gate closure is whenever a person goes on sick leave or is going to be away from an institution at a time. It's a security issue, that the person at the front gate doesn't allow people who are not actively working at the time into the facility. So you could have a gate closure if you were off on sick leave. You could have a gate closure for a variety of reasons.

[Filing No. 49-23, at ECF p. 8.] Ripberger points to the following instances as examples of prior gate locks that were issued and subsequently lifted. Ripberger retired from Pendleton in 2007,

but was rehired by the state in 2008. [Filing No. 49-23, at ECF p. 8.] She was out for a knee

replacement from September 15, 2010, to April 13, 2011, then returned to work. [Filing No. 49-23, at ECF p. 7.] After being terminated in 2010, she was hired at Pendleton as a corrections

counselor in 2011. [Filing No. 49-23, at ECF p. 7.] Despite the gate lock issued in 2012, she

was interviewed and hired by the state in 2014. [Filing No. 49-23, at ECF p. 4.] Corizon

suggests Ripberger should identify other applicants whom Corizon interviewed while gate

locked, but that is not necessary. Ripberger accomplishes this by pointing to evidence of her

own past employment. In particular, she was gate locked from Pendleton after her termination in

2010 when IDOC outsourced to Corizon, then was brought back to Pendleton in 2011 as a

corrections counselor.

Corizon further contends this evidence flies in the face of the policy reflected in its

employee handbook that security clearance by Corizon is a precondition of employment.

However, the policy reflects restricting access in the context of termination, not hiring. When an

employee is terminated, she is gate locked because she is no longer employed. The handbook

also describes withdrawal of access (gate lock) as something that can be permanent or

temporary. Ripberger's gate lock does not indicate whether it is permanent, only that it was the

result of her termination. [Filing No. 36-10, at ECF p. 3.] Overall, Corizon's contention does

not carry the day at the summary judgment stage. Rather, it tends to point to an additional key

material fact in dispute: whether a gate lock precludes Corizon from interviewing and hiring an

applicant. This is another issue for the jury.

## VI.    Conclusion

The Court grants Corizon's motion for summary judgment [Filing No. 34] in part and

denies it part. The Court grants summary judgment in favor of Corizon on the claims of sex and

age discrimination, which Ripberger abandoned.  As for the retaliation claim, the Court denies

summary judgment for the reasons set forth above.  In reaching this conclusion, the Court

sustains in part and overrules in part Corizon's objections to Ripberger's surreply.  [Filing No.

60.]

This case is set for a telephonic status conference at 2:30 p.m. on April 11, 2017.  The

parties shall participate by counsel, who shall call the Court at 317-229-3660.  The purpose of

this conference is to select a trial date and explore the need for a settlement conference.

Date: 3/27/2017

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Edward E. Hollis
FAEGRE BAKER DANIELS LLP (Indianapolis)
edward.hollis@faegrebd.com

Toni M. Everton
FAEGRE BAKER DANIELS LLP (Indianapolis)
toni.everton@faegrebd.com